DENNIS K. BURKE
United States Attorney
District of Arizona

FREDERICK A. BATTISTA
Maryland State Bar Member
PETER S. SEXTON
Arizona State Bar No. 011089
Assistant U.S. Attorneys
Two Renaissance Square
40 North First Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 514-7500
Fred.Battista@usdoj.gov
Peter.Sexton@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | CR 08-814-PHX-DGC |
|---|---|
| Plaintiff, | |
| v. | **SUPPLEMENTAL RESPONSE (IN ORDER TO CLARIFY RECORD) RE: DEFENDANT'S MOTION FOR PARTIAL DISCLOSURE OF GRAND JURY TRANSCRIPTS SO THAT DEFENDANT MAY BRIEF THE ISSUE OF PREJUDICE AND DISMISSAL OF INDICTMENT** |
| Daniel Rigmaiden, a.k.a. Steven Travis Brawner, a.k.a. Travis Rupard, and a.k.a. Patrick Stout, | |
| Defendant. | |

The United States, by and through undersigned counsel, hereby submits a supplemental response to defendant's Motion for Partial Disclosure of Grand Jury Transcripts So that Defendant May Brief the Issue of Prejudice and Dismissal of Indictment in order to clarify the record. This supplemental response is being filed in order to clarify certain factual matters raised by defendant's reply to the government's response. The factual clarifications are set forth in the attached Memorandum.

1    Respectfully submitted this 19th day of April, 2010.

DENNIS K. BURKE
United States Attorney
District of Arizona

S/Frederick A. Battista

FREDERICK A. BATTISTA
PETER S. SEXTON
Assistant U.S. Attorney

**Memorandum**

**I.   Introduction**

This Memorandum is being submitted to clarify two factual matters raised by defendant's recent reply to the government's recent response in this matter. The first relates to instructions regarding the three $9,000 shipments to SN-1/CI-2. The second issue relates to how the three $9,000 undercover shipments were handled in this case. Defendant has stated in his reply that the first shipment was via FedEx and the remaining two were shipped via the U.S. Postal Service, as discussed below, none of the three shipments were made via the U.S. Postal Service.

**II.   Directions to Ship Three Packages Containing $9,000 to CI-2**

As noted in the pleadings filed by both defendant and the government, CI-1 and SN-1/CI-2 discussed numerous methods regarding how proceeds from the scheme to defraud could be transferred from CI-1 to SN-1/CI-2 who was acting on behalf of the unknown Hacker. Throughout the contacts, SN-1/CI-2 made it clear that he was working with an unnamed person and that he was not the person actually filing the fraudulent returns. SN-1/CI-2 was the only known conduit for instructions, methods, etc., for getting proceeds to the unnamed Hacker.

SN-1/CI-2 did state on March 6, 2008, that he was willing to drive and personally meet CI-1 in order to pick up money. (3/6/08 Telephone Call Between CI-1 and SN-1 Transcript - Discovery 2/19/09 P. 5083.) However, CI-1 and SN-1/CI-2 later agreed on shipping the money and the money was shipped to a location identified by SN-1/CI-2. The following additional transcript excerpts of telephone contacts between CI-1 and SN-1/CI-2 are additional evidence of this final agreement while SN-1/CI-2 was clearly acting on behalf of the Hacker.

1.   3/5/08 Telephone Call Between CI-1 and JP Transcript (Discovery 2/19/09 P. 5078)

JP:   If you guys could help me come up with alternatives to get it to him, um like I say bottom line if it ends up in a box in my spot. So be it. At least I got his cut and I can tell him I got your cut. We gotta just you and I now you and I gotta figure out. What what I'm trying to do and it's not just save money at. I'm trying to take a lot of middle transactions out.

CI-1:   Right. Ok.

JP:   If there's any way we can we can from one spot in our own way. You get yours. I get mine. He gets his. With with as little complication as possible, then we can move on to the next

3

1      transaction. See what I'm saying?

2 CI-1: Right

3 JP: As soon as there's complications of getting his to him, then he you know it it's gonna delay in getting more

4 CI-1: Right

5    2.    3/7/08 Telephone Call Between CI-1 and JP Transcript (Discovery 2/19/09 P. 5091)

6 CI-1: Before anything even gets to that point. You know what I'm saying, I trust me enough to say let's go in and get all the money. I guarantee you we going to get your guy paid this time cause I need this to run for awhile. Because I need to be on a beach somewhere with sands in toes and not worrying about running out of money.

9 JP: Ok. Gotcha

10    3.    3/14/08 Telephone Call Between CI-1 and JP Transcript (Discovery 2/19/09 P. 5099-5100)

11 CI-1: Ok now, let me ask you this question here so that we get everything straight and everybody's happy with the amount of money that's flowing and everybody's on the same page. And you just let me know how you feel about this. Now, let's say I go pull $9,000. And I'll ship you that whole $9,000 and then the next week I'll pull $9,000 for me. And then we'll alternate weeks until April 15 and then after the 15th we can incorporate your guy Daniel to start pulling out large chucks of money. And then you take one large chunk and then I will take 1 large chunk.

14 JP: Ok. Now how based on based on what we've talked about last year. I split was gonna be 40, 40, 20 right?

16 CI-1: Right. I I was saying you know hold 9 grand or something cause I know you want to please the uh the uh hacker dude. And I'm just, I'll I'll shoot you this whole 9 grand.

17 JP: Ok.

18    4.    3/14/08 Telephone Call Between CI-1 and JP Transcript (Discovery 2/19/09 P. 5101)

19 JP: So what I'll do. Well Ill tell a what I'm gonna do just so you're aware so that it if anything interesting happens at least you'll know what I'm talking about. What I'm gonna do is you send me 9, I'm gonna email him and tell him you sent me 9. And in the end it's gonna equal out just like what you said. I'll tell him there's no rhyme or rhythm yet, but there will be so the first 9 is coming out. It's there. How much of it do you want me to have because it's still gonna equal out to um what we just said, 40,40, 20. But I mean I'll ask him if this front does he want the whole 9 um does he want me to take a portion of it or whatever so and I'll just keep track that way between him and I.

24 CI-1: Ok

25    5.    3/14/08 Telephone Call Between CI-1 and JP Transcript (Discovery 2/19/09 P. 5104)

26 JP: Hey sorry for the back to back. I'm just just wanted to do a quick reminder. Hit me with the user password as soon as possible so that he doesn't panic.

4

| | | |
|---|---|---|
| CI-1: | All right. The new the new one? | |
| JP: | Yeah. Cause he's going to want to monitor what happened. So he can give me shit about it you know what I mean. | |
| CI-1 | Right right right so I'll email it to you. | |
| JP: | Yeah. I'm already preparing for him to give me shit. But I don't care cause you're going to be pulling consistently (inaudible) so just keep it consistant. Keep it smart. He knows what to do. | |

Regardless of how many different means were discussed in order to get portions of the fraudulent scheme's proceeds to the SN-1/CI-2 and the Hacker, as stated in the government's original response, SN-1/CI-2 forwarded an e-mail form the Hacker which stated, "If your guys can't figure out how to do a bank wire without getting = caught then your side can get the money any way you guys think is best." (Original Government Response at Page 4.) CI-1 ultimately offered to ship the money and SN-1/CI-2 agreed and provided shipping instructions. (Original Government Response at Pages 4-8.) CI-1 and SN-1/CI-2 ultimately agreed on shipping and the money was shipped to a location identified by SN-1/CI-2. If SN-1/CI-2 had not told CI-1 where to ship the money, it never could have been sent.

**III.    The Actual Shipment of Three Packages Containing $9,000 to CI-2**

    A.    First Shipment - Picked Up by SN-1/CI-2 on March 19, 2008

All three of the $9,000.00 shipments to SN-1/CI-2 in Utah related to FedEx and not the U.S. Mail. None of the three were sent via the U.S. Postal Service. Paragraph 24 of the subject search warrant affidavit indicates that CI-1 told SN-1/CI-2 that the first $9,000 would be shipped via FedEx. In fact, the undercover agents made the shipment appear as if it had been sent via FedEx but they personally transported the money to Utah and delivered the money in a FedEx box, with a FedEx tracking number, to FedEx in Utah for delivery to SN-1/CI-2 in Utah. FedEx ultimately did deliver the package in Utah. These facts are detailed in the case discovery at (1) 2/19/09 Bate Stamp Nos. 5006-07, FedEx US Airbill and FedEx Track printout; (2) 2/19/09 Bate Stamp No. 5009, Surveillance Log; (3) 2/19/09 Bate Stamp Nos. 5010-12, Money Sent; and (4) 7/31/09 Item No. 5, Report from U.S. Postal Inspection Service, Page 3. No mail fraud charges were filed as a result of this shipment.

A.  Second Shipment - Picked Up on April 1, 2008 and Third Shipment - Picked Up on April 15, 2008

Paragraphs 25 and 26 of the subject affidavit note that the second and third $9,000 shipments were sent "overnight priority mail" to SN-1/CI-2. The paragraphs do not state that the shipper was the U.S. Postal Service. In fact, in each case, the $9,000 packages were shipped interstate from Arizona to Utah via FedEx. The FedEx US Airbills for each package indicate that each package was sent "FedEx Priority Overnite." These facts are detailed in the case discovery along with related information regarding the shipments. Case discovery at (1) 3/2/09 Bate Stamp No. 6362-63, FedEx US Airbill and FedEx Track printout (4/1/08 Shipment); (2) 3/2/09 Bate Stamp Nos. 6365-66, Surveillance Log; (3) 3/2/09 Bate Stamp Nos. 6367-6390, Money Sent; 3/2/09 Bate Stamp Nos. 6392 FedEx US Airbill (4/15/08 Shipment); and (4) 8/10/09 Item No. 2, Memo of Activity Related to Arrest of CI-2 (SN-1) on 4/15/08. Mail fraud counts 73 and 74 of the Superseding Indictment allege that the April 1 and April 15, 2008 shipments were made via FedEx. Shipments via FedEx may clearly violate the Mail Fraud Statute, 18 U.S.C. § 1341. Section 1341 covers matters sent via the "Postal Service" and "any private or interstate carrier," e.g., FedEx.

As a result of these facts, there continues to be no significant or material discrepancy between the allegations in the search warrant affidavit and Superseding Indictment.

**IV.  Conclusion**

For the foregoing reasons and the reasons set forth in the government's original response, defendant's Motion for Partial Disclosure of Grand Jury Transcripts So that Defendant May Brief the Issue of Prejudice and Dismissal of Indictment should be denied.

Respectfully submitted this 19th day of April, 2010.

                  DENNIS K. BURKE
                  United States Attorney
                  District of Arizona

                  S/Frederick A. Battista

                  FREDERICK A. BATTISTA
                  PETER S. SEXTON
                  Assistant U.S. Attorneys

**Certificate of Service**

I hereby certify that on April 19, 2010, I caused the attached document to be electronically transmitted to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Phil Seplow
Shadow Counsel for Defendant

A copy of the attached document was also mailed to:

Daniel David Rigmaiden
Agency No. 10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132


S/Frederick A. Battista

Frederick A. Battista
Assistant U.S. Attorney